Alvin M. Gomez, SBN 137818
Boris Smyslov, SBN 297252
**GOMEZ LAW GROUP**
2725 Jefferson Street, Suite 7
Carlsbad, California 92008
Telephone:  (858) 552-0000
Facsimile:   (760) 720-5217
amglawyers@yahoo.com

Attorneys for Plaintiff Dino Polselli, Jr.

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DINO POLSELLI, JR.,<br><br>Plaintiff,<br><br>v.<br><br>SIDNEY AKI; ROBERT HOOD; MOISES CASTILLO; U.S. CUSTOMS AND BORDER PROTECTION; KEVIN K. MCALEENAN, Acting Secretary, U.S. Department of Homeland Security; and DOES 1 through 30, inclusive,<br><br>Defendants. | CASE #:  **'19CV1041 WQHNLS**<br><br>**COMPLAINT FOR DAMAGES FOR:**<br><br>(1) Disparate Treatment Based on Disability;<br><br>(2) Civil Rights Title VII – Retaliation based on Protected Activity;<br><br>(3) Civil Rights Title VII – Hostile Work Environment – Harassment because of Protected Characteristics;<br><br>(4) Constructive Discharge;<br><br>(5) Disparate treatment based on Age;<br><br>(6) Unpaid Wages in Violation of the California Labor Code;<br><br>(7) Waiting Time Penalties Labor Code § 203; and,<br><br>(8) Improper Wage Statements in Violation of Labor Code §§ 226 and 226.3<br><br>**DEMAND EXCEEDS $75,000 UNLIMITED CIVIL CASE** |

Plaintiff DINO POLSELLI, JR. ("Mr. Polselli") alleges against Defendants SIDNEY AKI, ROBERT HOOD, MOISES CASTILLO, U.S. CUSTOMS AND BORDER

PROTECTION, KEVIN K. MCALEENAN, Acting Secretary, U.S. Department of Homeland Security, United States of America, and DOES 1 through 30, inclusive (jointly "Defendants") as follows:

## JURISDICTION AND VENUE

1. This is an appeal from the Equal Employment Opportunity Commission Decision on complaint for violation of civil rights, rehabilitation and age discrimination, hostile work environment, constructive termination and violation of California Labor laws. Jurisdiction is vested in this court under 5 U.S.C. § 7702, in that this is an appeal from the Equal Employment Opportunity Commission Decision right for which is provided by 29 C.F.R. § 1614.310 and authorized by 5 U.S.C. § 7702. This court has supplemental jurisdiction over the state law violation claims under 28 U.S.C. § 1367. Plaintiff has satisfied all administrative claims requirements.

2. The venue is proper pursuant to the 28 U.S.C. § 1391(e)(1), as Defendants are employees and the agency of Defendant United States of America and the events or omissions giving rise to the claims occurred within the County of San Diego.

## GENERAL ALLEGATIONS

3. At all times material herein, Plaintiff Dino Polselli, Jr. is an individual who resides in the County of San Diego, California. Plaintiff is a member of a protected class under both Federal law and California state laws.

4. At all times material herein, Defendant SIDNEY AKI ("Defendant Aki") was a San Ysidro Port of Entry Senior Executive Service Port Director employed by the U.S. CUSTOMS AND BORDER PROTECTION- United States of America and Mr. Polselli's supervisor.

5. At all times material herein, Defendant ROBERT HOOD ("Defendant Hood") was a San Ysidro Port of Entry GS - 15 Assistant Port Director employed by the U.S. CUSTOMS AND BORDER PROTECTION – United States of America, and Mr. Polselli's supervisor.

6. At all times material herein, Defendant MOISES CASTILLO ("Defendant Castillo") was a San Ysidro Port of Entry GS - 14 Watch Commander employed by the U.S. CUSTOMS AND BORDER PROTECTION- United States of America, and Mr. Polselli's supervisor.

7. At all times material herein, Defendant U.S. CUSTOMS AND BORDER PROTECTION is a federal agency of Defendant United States of America, who employed Mr. Polselli.

8. At all times material herein, Defendant KEVIN K. MCALEENAN is an Acting Secretary, U.S. Department of Homeland Security and Defendant United States of America.

9. Plaintiff is unaware of the true names and capacities of Defendants Does 1 through 30, inclusive. Plaintiff is informed and believe and thereon alleges that each fictitious Defendant was in some way responsible for the matters and things complained of herein, and in some fashion, have legal responsibility therefore. When the exact nature and identity of each fictitious Defendant's responsibility for the matters and things herein alleged is ascertained by Plaintiff, he will seek leave to amend this complaint.

10. On or about December 2015, Mr. Polselli was diagnosed with cancer. Mr. Polselli notified his employer, Defendant, about it immediately, on or about December 2015.

11. Once Mr. Polselli found out about that he is required to have surgery, a Radical Prostatectomy and Bilateral Lymphectomy, on March 15, 2016, he filled out a Family and Medical Leave Act request (WH 380) and submitted completed form to Defendants.

12. On this request, Mr. Polselli indicated he was going to have surgery on March 15-18th and needed physical therapy from June to September 2016. Further, Mr. Polselli indicated that he is required to rest and recover post-surgery through June 30, 2016 and would only be cleared to work on July 1, 2016.

13. Upon returning to work on July 5, 2016, Mr. Polselli was put on the Alternate Duty Report, indicating he was not permitted to work overtime.

14. Upon returning from medical leave on July 5, 2016, Mr. Polselli began hearing rumors that he was going to be fired.

15. On or about October 2016, Mr. Polselli was told by his supervisor, Watch Commander Chris Miller, that Defendants wanted him relieved of his duties. At that time Mr. Polselli had never received any performance issues or reports.

16. When Mr. Polselli asked Mr. Miller for the reason, Mr. Miller was not able to explain why Defendants wanted Mr. Polselli relieved.

17. Mr. Polselli asked Mr. Miller to ask for permission to speak to the Port Director on numerous occasions and each time was told by Mr. Miller that the request was denied by Assistant Port Director Hood until sometime in March 2017.

18. During this same timeframe Mr. Polselli was working while on medical leave Defendants told Mr. Polselli that he should be relieved of duty because he needed a break.

19. From October 2016 and until March 30, 2017, Mr. Polselli was left wondering if he would be fired any moment.

20. Mr. Polselli underwent radiation therapy from 12/21/16 to 2/14/17 and sent Defendants his schedule of the dates on December 14, 2016.

21. Mr. Polselli went on medical leave a second time to undergo additional medical procedures from 1/25/17 through 6/19/17.

22. In March of 2017, Mr. Polselli had to undergo a second invasive medical procedure as an attempt to cure the radiation damage done to his bladder.

23. As discussed further below, Mr. Polselli was required to work while he was in medical leave.

24. Mr. Polselli returned to work June 19, 2017.

25. On June 19, 2017, Mr. Polselli's new supervisor approached him with hostility and did not bother to introduce himself as one.

26. Within a week of returning to work, Mr. Polselli was relieved of all his managerial duties. Mr. Polselli was not told why he was relieved of his duties, neither by Defendants.

27. Defendants knew that Mr. Polselli had cancer. Defendants also knew about the need of Mr. Polselli to constantly wear diapers and to go to restroom frequently because of his medical condition. Defendants were aware that Mr. Polselli had a medical condition that was preventing him from performing his duties.

28. Without even considering if Mr. Polselli possessed necessary qualifications, Defendants, without looking into his personnel file, rotated him from the canine department, where he has many years of experience, into the passenger operations unit where he did not have experience.

## FIRST CAUSE OF ACTION

### (Disparate Treatment Based on Disability – against all Defendants)

29. Plaintiff Dino Polselli, Jr. hereby re-alleges and incorporates by reference the allegations contained in Paragraphs 1 through 28, as though fully set forth herein.

30. Mr. Polselli's disability was the reason for Defendanots' decision to demote and harass him, to require him to work while on medical leave without being paid, to intimidate and push him out of his position based upon his medical condition.

31. An action is an adverse employment action if it materially affects the compensation, terms, conditions, or privileges of employment. An action is an adverse employment action if a reasonable employee would have found the action materially adverse, which means it might have dissuaded a reasonable worker from making or supporting a charge of discrimination.

32. Mr. Polselli has prostate cancer, a disability under the ADA, which created a genitourinary physical impairment. Mr. Polselli was substantially limited in his ability to work compared to most people in the general population because he needed to attend to the restroom more frequently, miss work for medical procedures,

and be restricted in working overtime.

33. Mr. Polselli was a qualified individual with a disability who, with a reasonable accommodation, could perform the essential functions of the employment position that he held as Branch Chief. Mr. Polselli continued to satisfy the requisite skill, experience, education, and other job-related requirements of his employment position as Branch Chief.

34. Defendants failed to fulfill their duty to provide a reasonable accommodation to Mr. Polselli. Rather, Defendants created a "pre-text" for the negative treatment of Mr. Polselli.

35. The decision to move Mr. Polselli from his job was made about a year prior to the moving happening and the annual rotation was a cover up for the previously determined action.

36. Mr. Polselli requested an accommodation, to adjust his schedule to be able to attend medical procedures, to recover from the procedures done for his disability, and to be able to go to the restroom as often as he needed.

37. While Mr. Polselli was on leave and after he returned to work he was not provided adequate accommodation.

38. Once Mr. Polselli returned to work in July 5, 2016, he was incontinent and unable to control urine output. Mr. Polselli notified Defendants that he needed to wear diapers and that he needed to change every half hour. Defendants failed to give Mr. Polselli any accommodations and failed to modify his work schedule.

39. On or about October 2016, after Mr. Polselli had returned from leave for the first time, Defendants knew Mr. Polselli needed to take additional days off work to see his doctor that was treating his cancer yet still issued Mr. Polselli a Leave Abuse notice. Defendants knew that such action was unwarranted and was only done to harass Mr. Polselli and create intolerable working conditions. Defendants knew of Mr. Polselli's medical condition and that the medical leave was warranted.

40. Defendants knew that Mr. Polselli had provided the necessary medical confirmation documents to justify his absence from work and were both aware that he was fighting cancer. Yet, Defendants still wrote up unmerited leave abuse notices. Defendants knew Mr. Polselli was not abusing his sick leave and knew of his valid medical procedures.

41. While Mr. Polselli was resting and recovering in his second medical leave from his invasive surgery in late January 2017, Defendants continually required Mr. Polselli to read and answer emails, answer and return phone calls, and go into work to complete monthly reports. Mr. Polselli spoke to his supervisor almost every day while he was on leave. While on leave Defendants would include Mr. Polselli in all emails and Mr. Polselli was expected to read them and respond. Additionally, Mr. Polselli was told while he was on medical leave that Defendants advised that he needed to monitor his duty cell. Mr. Polselli was on leave and being blamed for evaluations and work done by other employees.

42. Mr. Polselli was in charge of maintaining a monthly excel database on the amount of narcotics confiscated in the K9 program, one data base of many created by Mr. Polselli. Given that Mr. Polselli was the only person with the knowledge to complete a monthly update of the excel database (work commensurate with his position) he was required to come in to work while on leave to update the report.

43. While on medical leave, Mr. Polselli also has to go into work to attend work meetings. The following dates are estimates of when Mr. Polselli had to go to work for at least 2-4 hours per day while on leave:

- May 1-5th, 2016,
- June 1-5th, 2016,
- Feb 2017 went in for a meeting before his second surgery,
- March 30th 2017- for a meeting with Mr. Aki.
- April 1-5th, 2017, (included a K9 meeting which lasted 2-3 hours)
- May 1-5th 2017. (included a K9 meeting which lasted 2-3 hours)

44. Defendants did not compensate Mr. Polselli for any of those hours worked while he was on leave. Defendants inhibited Mr. Polselli from focusing on recovering his health. It is the employer's duty to compensate Mr. Polselli for all hours worked. Defendants prevented Mr. Polselli from fully resting and recovering. Defendants added unwarranted stress to Mr. Polselli's life and failed to follow federal and California law.

45. Mr. Polselli was effectively demoted being moved from a job which he done for 27 years to a job he never done before, harassed, bombarded with phone calls and emails, received medical leave abuse notices and required to work while on medical leave without being paid because of his disability.

## SECOND CAUSE OF ACTION

### (Civil Rights – Title VII – Retaliation Based on Protected Activity – against all Defendants

46. Plaintiff Dino Polselli, Jr. hereby re-alleges and incorporates by reference the allegations contained in Paragraphs 1 through 45, as though fully set forth herein

47. It is illegal to harass an employee because they have complained about discrimination, filed a charge of discrimination, or participated in an employment discrimination investigation or lawsuit.

48. It is retaliatory action when an employer, because of the EEO's activity, acts in a manner such as: reprimands the employee or gives a performance evaluation that is lower than it should be; transfers the employee to a less desirable position; engages in verbal or physical abuse; threatens to make, or actually makes reports to authorities; increases scrutiny; spreads false rumors; or makes the person's work more difficult. (for example, punishing an employee for an EEO complaint by purposefully changing his work schedule to conflict with family responsibilities)

49. An adverse action in the context of a retaliation claim need not materially affect the terms and conditions of employment so long as a reasonable

employee would have found the action materially adverse, which means it might have "dissuaded a reasonable worker from making or supporting a charge of discrimination." *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006); *see also Thompson v. N. Am. Stainless, LP*, 562 U.S. 170 (2011) (applying *Burlington* standard)

50. Mr. Polselli participated in an activity protected under federal law that is serving as a witness in a discrimination complaint. On or about May of 2017, Plaintiff submitted evidence to support a Mr. Kahn (Canine Supervisor), colleague's claim of discrimination against Watch Commander Vonna Rossilli, who was a close friend of Mr. Polselli's Superior Watch Commander Veronica Chavez. U.S. Customs and Border Protections knew that Plaintiff was participating in an EEO investigation by serving as a witness.

51. On or about June 20, 2017, Mr. Polselli met with Watch Commander Veronica Chavez at the direction of his immediate supervisor, Watch Commander Miller, regarding the authorized number of supervisors for the K9 unit Mr. Polselli was in charge of. Mr. Polselli believed there was a discrepancy, he believed the list was 1 short and given that Ms. Chavez was the "scheduling guru" he was directed to get her input. The meeting lasted around 3 minutes. Ms. Chavez told Mr. Polselli that he was "offending" her. Ms. Chavez went straight to Defendant Castillo, her friend, to complain about Mr. Polselli rather than going to Mr. Polselli's direct supervisor, Watch Commander Miller.

52. The next day, June 21, 2017 after the meeting with Ms. Chavez, Defendant Castillo had Mr. Polselli's supervisor to summon Mr. Polselli into his office. Mr. Polselli's supervisor went to Mr. Polselli and said "you need to come with me." The three of them sat down for a meeting. Defendant Castillo immediately asked Mr. Polselli about his meeting with "Vero." Mr. Polselli did not know who Defendant Castillo was referring to. As they are close friends, Defendant Castillo's nickname for Deputy Veronica Chavez is "Vero." Defendant Castillo wanted to know if and why Mr.

Polselli was "rude to her." Defendant Castillo then turned to Mr. Polselli's supervisor (Mr. Miller) and said that Mr. Polselli was not to communicate with "anyone from downtown" anymore. Further, Defendant Castillo told Mr. Polselli's supervisor that Mr. Polselli was no longer permitted to approve supervisory swaps. Defendant Castillo removed certain managerial powers inherent in Mr. Polselli's position as Branch Chief. Additionally, the day after the meeting, Defendant Castillo went to Mr. Polselli's subordinate, Alex Vitella, without first going to Mr. Polselli and removed Mr. Vitella from the his position as scheduling supervisor.

53. Additionally, on or about the end of June 2017, Defendant Castillo humiliated and chastised Mr. Polselli in front of his immediate subordinates. Defendant Castillo would make derogatory remarks towards Mr. Polselli in the presence of others.

54. Defendants subjected Mr. Polselli to an adverse employment action, that is relieved of managerial duties, reprimanded, given a performance evaluation that is lower than it should be, increased scrutiny, gave a lower performance score than what it should be, and made Mr. Polselli's work more difficult.

55. Mr. Polselli's superiors, including, Defendant Castillo, Defendant Hood, and Defendant Aki, engaged in retaliatory acts because of Mr. Polselli's assistance in the case brought by Mr. Khan.

56. Defendants retaliated against Mr. Polselli in that they subjected Mr. Polselli to an adverse employment action, that is relieved of managerial duties, reprimanded, given a performance evaluation that is lower than it should be, increased scrutiny, made Mr. Polselli's work more difficult, and subjected to other adverse employment actions.

57. Defendants engaged in retaliatory acts because of Mr. Polselli's assistance in the case brought by Mr. Khan. Around June 23, 2017 Mr. Miller ordered Mr. Polselli to remove and reassign Mr. Khan from his current assignment even though his EEO case was still pending. When Defendants were giving such orders,

they were well aware of the EEO complaint by Mr. Khan. Immediately, Mr. Polselli was contacted by Customs & Border Protection Chief Counsel attorney, Amy Dell, asking why he relieved Mr. Khan of his duties while the EEO complaint was being investigated. Mr. Polselli explained that he was directed to by his supervisor, Watch Commander Miller.

58. As indicated above, Mr. Polselli was subjected to the adverse employment action because of his cooperation in an EEO complaint filed by Mr. Kahn.

### THIRD CAUSE OF ACTION
### (Civil Rights – Title VII – Hostile Work Environment – against all Defendants)

59. Plaintiff Dino Polselli, Jr. hereby re-alleges and incorporates by reference the allegations contained in Paragraphs 1 through 58, as though fully set forth herein.

60. An employer may be liable when an employee's supervisor creates a retaliatory and disability hostile work environment for that employee. A "supervisor" is someone who is empowered by the employer to take tangible employment actions regarding the employee, such as hiring, firing, failing to promote, reassigning with significantly different responsibilities, or significantly changing benefits. Defendant Hood, Defendant Aki, and Defendant Castillo were all "supervisors" who took tangible employment actions against Mr. Polselli.

61. A plaintiff must show that the work environment was both subjectively and objectively hostile." *McGinest v. GTE Service Corp.*, 360 F.3d 1103, 1113 (9th Cir. 2004); *see also Fuller*, 47 F.3d at 1527 (citing *Harris*, 510 U.S. at 21-22). For the objective element, the Ninth Circuit has adopted the "reasonable victim" standard. *Ellison v. Brady*, 924 F.2d 872, 878-80 (9th Cir. 1991).

62. Mr. Polselli was subjected to demotion; required to work while on medical leave and not compensated; issued leave abuse notices; insulted; intimidated

while recovering from surgery; eavesdropped upon; humiliated in front of immediate subordinates; received calls and emails while recovering from surgery; rumors were spread of him; his work was made more difficult by supervisors; and received lower performance than what it should have been.

63. Such conduct of Defendants was unwelcome and sufficiently severe or pervasive to alter the conditions of the Mr. Polselli's employment and create a disability and retaliatory abusive or hostile work environment. Mr. Polselli perceived this working environment to be abusive or hostile.

64. A reasonable man in the Mr. Polselli's circumstances would consider the working environment to be abusive or hostile.

65. Therefore, Mr. Polselli was a subject to a hostile work environment.

## FOURTH CAUSE OF ACTION

### (Constructive Discharge – against all Defendants)

66. Plaintiff Dino Polselli, Jr. hereby re-alleges and incorporates by reference the allegations contained in Paragraphs 1 through 65, as though fully set forth herein.

67. A constructive discharge occurs when the working conditions are so intolerable that a reasonable person in the plaintiff's position would feel compelled to resign. *Pennsylvania State Police v. Suders*, 542 U.S. 129, 147 (2004). *Accord Poland v. Chertoff*, 494 F.3d 1174, 1184 (9th Cir.2007); *see also Emeldi v. Univ. of Or.*, 673 F.3d 1218, 1225 (9th Cir.2012) (holding in Title VII retaliation case that constructive discharge occurs when "a retaliating employer creates working conditions so extraordinary and egregious as to overcome the normal motivation of a competent, diligent, and reasonable employee to remain on the job.")

68. Upon returning from leave for the first time until his last date of employment, Defendants created a hostile and egregious work environment. Defendants made Mr. Polselli work for free while in medical leave recovering from surgery, removed his authority, retaliated against for his assistance in Mr. Kahn's

Complaint for Damages

investigation, spread rumors about his future with employer, made work more difficult, increased scrutiny over his work. Defendants' actions mentioned herein created extraordinary and egregious working conditions that led Mr. Polselli to not remain on the job.

69. A reasonable employer would realize the intolerable and aggravated working conditions they intentionally created and knowingly permitted. An employer's actual knowledge of the existence of such conditions, and subsequent failure to remedy them, may constitute circumstantial evidence that the employer deliberately forced the employee to resign.

70. By creating a hostile and intolerable working environment, Defendants caused Mr. Polselli to be constructively discharged. Mr. Polselli last date of employment was on or about December 31, 2017. Mr. Polselli had received numerous awards in his 37 year tenure with the Government and only planned on retiring on 12/31/2021. Mr. Polselli lost these future earnings and is entitled to damages.

## FIFTH CAUSE OF ACTION

### (Disparate Treatment Based on Age – against all Defendants)

71. Plaintiff Dino Polselli, Jr. hereby re-alleges and incorporates by reference the allegations contained in Paragraphs 1 through 70, as though fully set forth herein.

72. Mr. Polselli was usurped of managerial duties and constructively discharged because of his age. Defendants took away Mr. Polselli's managerial duties, issued medical leave abuse notices, required to work while on medical leave, intimidated, retaliated against him.

73. Mr. Polselli was over the age of 40 at that time. Defendants took such actions because of his age.

74. Defendants relieved Mr. Polselli of his duties in order to replace him with an employee that would cost the Agency less money.

## SIXTH CAUSE OF ACTION

### (Unpaid Wages – against all Defendants)

75. Plaintiff Dino Polselli, Jr. hereby re-alleges and incorporates by reference the allegations contained in Paragraphs 1 through 74, as though fully set forth herein.

76. Plaintiff Mr. Polselli had a binding employment contract with Defendants, who were obligated to compensate him for the work performed both by the terms of the contract and by California Labor laws. *Reynolds v. Bement* (2005) 36 Cal.4th 1075, 1084 ["An employee's wage rights may be provided for in an employment contract and also are closely regulated by statute."], abrogated on other grounds by *Martinez v. Combs* (2010) 49 Cal.4th 35.

77. Defendants knew that Mr. Polselli was on a medical leave, but still forced him to perform work for them at that time. Defendants did not pay Mr. Polselli for the time he worked while being on a medical leave.

78. Accordingly, Mr. Polselli is entitled to recovery of the full amount of earned but unpaid wages, interest, penalties and attorney fees and costs.

## SEVENTH CAUSE OF ACTION

### (Waiting Time Penalties – against all Defendants)

79. Plaintiff Dino Polselli, Jr. hereby re-alleges and incorporates by reference the allegations contained in Paragraphs 1 through 78, as though fully set forth herein.

80. California Labor Code §§ 201 and 202 require Defendants to pay all compensation due and owing to former employees at or around the time employment is terminated.

81. Section 203 of the California Labor Code provides that if an employer willfully fails to pay compensation promptly upon discharge or resignation, as required by §§ 201 and 202, then the employer is liable for penalties in the form of continued compensation up to thirty (30) work days.

82. At all times material Mr. Polselli was an employee of Defendants covered by Labor Code § 203.

83. Defendants willfully failed to pay Mr. Polselli who is no longer employed by Defendants for his uncompensated hours upon his termination from employment with Defendants as required by California Labor Code §§ 201 and 202.

84. As a result, Defendants are liable to Mr. Polselli for waiting time penalties amounting to thirty days wages for each such Plaintiff pursuant to California Labor Code § 203, interest, penalties and attorney fees and costs..

## EIGHTH CAUSE OF ACTION

*(Failure to Furnish Timely and Accurate Wage Statements in Violation of Labor Code §§ 226 and 226.3)*

85. Plaintiff Dino Polselli, Jr. hereby re-alleges and incorporates by reference the allegations contained in Paragraphs 1 through 84, as though fully set forth herein.

86. California Labor Code § 226(a) provides that "[e]very employer shall, semimonthly or at the time of each payment of wages, furnish each of his or her employees, either as a detachable part of the check, draft, or voucher paying the employee's wages, or separately when wages are paid by personal check or cash, an accurate itemized statement in writing showing (1) gross wages earned, (2) total hours worked by the employee[ ... ], (3) the number of piece-rate units earned and any applicable piece rate if the employee is paid on a piece-rate basis, (4) all deductions, provided that all deductions made on written orders of the employee may be aggregated and shown as one item, (5) net wages earned, (6) the inclusive dates of the period for which the employee is paid, (7) the name of the employee and his or her social security number, ... (8) the name and address of the legal entity that is the employer, and (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee ... "

87. Labor Code § 226(e) provides that an employee is entitled to recover $50

for the initial pay period in which a violation of § 226 occurs and $100 for each subsequent pay period, as well as an award of costs and reasonable attorneys' fees, for all pay periods in which the employer knowingly and intentionally failed to provide accurate itemized statements to the employee causing the employee to suffer injury.

88. Defendants knowingly and intentionally failed to furnish Mr. Polselli with timely and accurate itemized statements showing the gross wages earned, including all time worked, as required by Labor Code § 226(a), in that the hours worked while on medical leave were not included in gross wages earned by Mr. Polselli.

89. Defendants' failure to provide Mr. Polselli with accurate itemized wage statements during the liability period has caused Mr. Polselli to incur economic damages in that Defendant provided inaccurate information regarding hours worked, which masked its underpayment of wages to Mr. Polselli.

90. As a result of Defendants' issuance of inaccurate itemized wage statements to Mr. Polselli in violation of Labor Code § 226(a), Plaintiff is entitled to recover penalties pursuant to § 226(e) of the Labor Code and attorney fees.

## PRAYER FOR RELIEF

**WHEREFORE**, DINO POLSELLI, JR. prays for judgment against Defendant as follows:

<u>As to the First Cause of Action (Disparate Treatment Based on Disability):</u>

1. For general and special damages, including lost wages, lost employee benefits, bonuses, vacation benefits, and other special and general damages, together with interest on these amounts, according to proof;

2. For mental and emotional distress damages, according to proof;

3. For punitive and exemplary damages, according to proof;

4. For costs of suit and attorney fees;

5. For an award of interest, including prejudgment interest, at the legal

1 | rate; and

2 | 6. For such other and further relief as the Court deems appropriate.

<u>As to the Second Cause of Action (Civil Rights Title VII – Retaliation based on Protected Activity)</u>:

1. For general and special damages, including lost wages, lost employee benefits, bonuses, vacation benefits, and other special and general damages, together with interest on these amounts, according to proof;

2. For punitive and exemplary damages, according to proof;

3. For costs of suit and attorney fees;

4. For an award of interest, including prejudgment interest, at the legal rate; and

5. For such other and further relief as the Court deems appropriate.

<u>As to the Third Cause of Action (Civil Rights Title VII – Hostile Work Environment – Harassment because of Protected Characteristics)</u>:

1. For general and special damages, including lost wages, lost employee benefits, bonuses, vacation benefits, and other special and general damages, together with interest on these amounts, according to proof;

2. For mental and emotional distress damages, according to proof;

3. For punitive and exemplary damages, according to proof;

4. For costs of suit and attorney fees;

5. For an award of interest, including prejudgment interest, at the legal rate; and

6. For such other and further relief as the Court deems appropriate.

<u>As to the Fourth Cause of Action (Constructive Discharge)</u>:

1. For general and special damages, including lost wages, lost employee benefits, bonuses, vacation benefits, and other special and general damages, together with interest on these amounts, according to proof;

2. For punitive and exemplary damages, according to proof;

3. For costs of suit and attorney fees;

4. For an award of interest, including prejudgment interest, at the legal rate; and

5. For such other and further relief as the Court deems appropriate.

<u>As to the Fifth Cause of Action (Discrimination Based on Age)</u>:

1. For general and special damages, including lost wages, lost employee benefits, bonuses, vacation benefits, and other special and general damages, together with interest on these amounts, according to proof;

2. For mental and emotional distress damages, according to proof;

3. For punitive and exemplary damages, according to proof;

4. For costs of suit and attorney fees;

5. For an award of interest, including prejudgment interest, at the legal rate; and

6. For such other and further relief as the Court deems appropriate.

<u>As to the Sixth Cause of Action (Unpaid Earned Wages in Violation of the California Labor Code.)</u>:

1. For all due and unpaid wages, compensatory damages, and other special and general damages according to proof;

2. For interest on all due and unpaid wages, pursuant to <u>California Labor Code</u> § 218.6, at the legal rate specified by <u>California Civil Code</u> § 3289(b), accruing from the date the wages were due and payable.

3. For reasonable attorney's fees pursuant to <u>California Labor Code</u> §§ 218.5, 226(g), 1194(a), and <u>California Code of Civil Procedure</u> § 1021.5;

4. For appropriate injunctive relief;

5. For appropriate equitable relief;

6. For appropriate declaratory relief;

7. For an award of interest, including prejudgment interest, at the legal rate; and

8.    For such other and further relief as the Court deems appropriate.

<u>As to the Seventh Cause of Action (Waiting Time Penalties):</u>

1.    For waiting time penalties for Plaintiff who is no longer employed by Defendant pursuant to Labor Code § 203; and

2.    For such other and further relief as the Court may deem appropriate.

<u>As to the Eighth Cause of Action (Improper Wage Statements in Violation of Labor Code §§ 226 and 226.3;):</u>

1.    For penalties as provided, per violation, by Labor Code § 226.8;

2.    For statutory penalties under Labor Code § 226(e);

3.    For statutory penalties under Labor Code § 226.3; and

4.    For such other and further relief as the Court may deem appropriate.

DATED: June 3, 2019

**GOMEZ LAW GROUP**

By: /s/ Alvin M. Gomez

ALVIN M. GOMEZ
Attorneys for Plaintiff
DINO POLSELLI, JR.